IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Caroline Cook Bailey, | ) | C/A No. 0:11-322-MBS-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Caroline Cook Bailey ("Bailey"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

## ADMINISTRATIVE PROCEEDINGS

In May 2007, Bailey applied for DIB and SSI, alleging disability beginning February 15, 2007. (Tr. 112-19.) Bailey's applications were denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on September 1, 2009, at which Bailey, who was not represented, appeared and testified. Bailey's mother also appeared and testified, and Bailey submitted a letter from her fifteen-year old son. The ALJ issued

a decision on September 23, 2009 denying benefits and concluding that Bailey was not disabled. (Tr. 9-18.)

Bailey was born in 1963 and was 43 years old at the time of her alleged disability onset date. (Tr. 112.) She has a high-school education and has past relevant work experience as custodian, convenience store clerk, and telephone collections operator. (Tr. 137-142, 147.) Bailey alleges disability since February 15, 2007 due to fibromyalgia. (Tr. 23, 146.)

The ALJ found as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity since February 15, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

   \* \* \*

3. The claimant has the following severe impairments: fibromyalgia and degenerative disc disease (20 CFR 404.1520(c) and 416.920(c)).

   \* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

   \* \* \*

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Specifically, the claimant is able to lift and carry up to 10 pounds occasionally and lesser amounts frequently, sit for 6 hours in an 8-hour day, and stand and walk occasionally. Such a residual functional capacity is well supported by the weight of the evidence of record.

   \* \* \*

6. As a result of her residual functional capacity as described above, the claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

*PJG*

7.  The claimant was born on [REDACTED], 1963 and was 43 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

\* \* \*

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 15, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 11-16.) On December 10, 2010, the Appeals Council denied Bailey's request for review, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-3.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

PJG

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform her past relevant work; and

(5) whether the claimant's impairments prevent her from doing any other kind of work.

See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

PJG

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Bailey raises the following issues for this judicial review:

I. The ALJ failed to correctly assess Bailey's credibility and subjective allegations.

II. The ALJ's residual functional capacity findings are not supported by the evidence or properly explained, as required by Social Security Ruling 96-8p.

(Pl.'s Br., ECF No. 19.)

## DISCUSSION

A.  **Plaintiff's Credibility**

Bailey argues that the ALJ erred because, in light of his "heightened standard of care" in her *pro se* case, he failed to accurately evaluate the medical evidence and assess her credibility regarding the intensity, persistence, and limiting effects of her subjective symptoms.

The ALJ has a duty to ensure a claimant receives a full and fair hearing of her claims. Sims v. Harris, 631 F.2d 26, 27 (4th Cir. 1980). This duty includes exploring relevant facts and inquiring into issues necessary for adequate development of the record. Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). This duty is particularly important where a claimant appears *pro se.* Marsh v. Harris, 632 F.2d 296, 299 (4th Cir. 1980).

However, the court agrees with the Commissioner that the heightened duty of care in *pro se* cases relates to the development of the issues and facts in the record, and does not impact the weight to be given to the evidence in the record. See Bell v. Chater, 57 F.3d 1065, 1995 WL 347142 (4th Cir. June 9, 1995) (Table) ("[T]he ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record.") (citing Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994)). Whether she is represented or not, the plaintiff bears the burden of proof, and she is responsible for providing evidence to support her application and demonstrate disability. See 20 C.F.R. §§ 404.1512(a) & (c), 416.912(a) & (c); 42 U.S.C. § 423(d)(5)(A).

Here, the ALJ took testimony from Bailey about the relevant factors to his consideration, including her medical history, subjective complaints, living conditions, daily activities, and work history, and he considered additional evidence from her son and mother. Bailey does not point to any particular issue or evidence that the ALJ neglected to inquire about or investigate, and therefore,

Page 6 of 15

PJG

the court finds that Bailey has failed to show that the ALJ insufficiently developed the record in consideration of Bailey's claim.

As to Bailey's credibility, in evaluating subjective complaints, the Fourth Circuit Court of Appeals has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig, 76 F.3d at 594 (4th Cir. 1996). "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Id. (internal quotation omitted). After that threshold requirement has been met, the ALJ must expressly consider "the intensity and persistence of the claimant's pain and the extent to which it affects her ability to work." Id. at 595.

In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

(i) Your daily activities;

(ii) The location, duration, frequency, and intensity of your pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

PJG

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

Bailey contends that the ALJ erred in assessing her credibility as to her subjective complaints of pain because he ignored, summarized, or misstated the medical evidence, without adequate explanation, in favor of evidence that he viewed "as supportive of a denial decision." (ECF No. 19 at 23.) Bailey's arguments are unavailing. The ALJ fully discussed the evidence cited by Bailey in support of her allegations of pain, but simply found that her claims as to the degree of severity and limitations were not credible to the extent they conflicted with objective medical tests, evidence of successful pain management, and proof of daily activities. Bailey first argues that the ALJ merely summarized the results of her MRI test, which she contends contains results "so abnormal on so many fronts that it would reasonably support almost any allegation she would make." (ECF No. 19 at 18.) Review of the ALJ's decision reveals that he discussed Bailey's MRI findings in detail, and concluded that her spinal condition did not impair her functioning to the degree that she alleged because the records of an examination four months after the MRI "revealed normal motor functioning with an intact gait and only some decreased strength (4/5) of the bilateral lower extremities." (Tr. 15.) Bailey also asserts that the ALJ's conclusion that she otherwise had "generally normal" examination results is not supported because her records revealed she exhibited issues such as muscle spasms in February 2007 at the onset of her condition, had all eighteen tender

points in her fibromyalgia diagnosis in April 2007, and complained of continuing pain during subsequent doctor visits through 2009. However, the ALJ's decision listed objective evidence from records from August 2007 showing that "with the institution of treatment," Bailey's condition had stabilized, and she was "noted to have a normal gait and station, a full range of motion, intact strength and sensation and normal muscle tone." (Id.) Moreover, the ALJ observed that, in September 2007, despite her positive tender points, Bailey's neurological testing was "unremarkable," and she had "essentially normal range of motion testing with regular strength and sensation." (Id.) In January 2008, he observed her physical examination was "unremarkable." (Id.) In fact, a review of the record from that visit reveals that, although Bailey reported she had good and bad days, she also reported exercising and walking, and her objective general notes were marked "well." (Tr. 316.) While Bailey argues that her reports of continuing pain to her doctors shows that the ALJ's findings were not supported by the evidence, it is clear that the ALJ did not disregard her complaints about pain. On the contrary, the ALJ found that Bailey had a serious impairment, and that she regularly sought treatment for that pain. However, the ALJ also found grounds to question Bailey's claims about the degree to which her pain affected her functioning by observing that she did not report "such significant restrictions to her medical providers." (Tr. 13.) For example, the ALJ observed that while Bailey testified as to problems such as "give-away weakness" in her legs, his review of her treatment notes showed that she never reported such issues to her doctors and, in fact, "examination generally revealed an intact gait and station." (Id.)

The ALJ also properly considered evidence that Bailey reported pain improvement from several prescriptions and injections without complaints to her doctors of significant side effects. (Id. 13, 14, 15.) Bailey attacks the ALJ's finding that she "experienced generally good pain relief,"



arguing that relief was temporary and her reported pain was still high despite the improvement. Nevertheless, the ALJ's decision also took into account that she did not require physical therapy, TENS unit therapy, or surgery in concluding that doctors chose to treat her conservatively, supporting his conclusion that her condition was not as severe as she alleged. (Id. 15.)

As a final area of inquiry into Bailey's credibility, the ALJ correctly considered how her daily activities and hobbies reflected her limitations and the impact of her condition. Bailey argues that her ability to walk at her own pace and perform light activities is insufficient to establish her ability to work. She also argues that the ALJ relied on her reported hobbies of trampoline jumping and horseback riding to find she was not credible, but that he "failed to acknowledge this record was shortly after [her] onset date and was likely referring to past hobbies." (ECF No. 19 at 21-22.) However, the ALJ's opinion includes a full discussion of the range of activities claimed by Bailey in light of her condition in assessing her capabilities. The ALJ listed some of Bailey's hobbies—including horseback riding—but did not conclude that she was capable of performing work that would involve such strenuous activity. Rather, he tailored his residual functional capacity finding to her impairments within a range of sedentary activity consistent with her own testimony and reports to her doctors. To the extent she testified about not being able to sit for long periods, difficulty using her hands, and having good and bad days, the ALJ also noted that she reported activities such as mowing her lawn, watching TV, walking for exercise, shopping, driving, and performing light housework. (Tr. 13, 14.) The ALJ additionally observed as an aggravating factor that Bailey continued to smoke up to two packs of cigarettes daily, despite contrary advice from her doctors. (Id. 14.) To the extent Bailey argues that the ALJ's analysis is flawed with regard to her subjective complaints of pain under Hines v. Barnhart, 453 F.3d 559 (4th Cir. 2006), that argument

PJG

is not availing. "The court's point in Hines was that the absence of objective medical evidence of the intensity, severity, degree, or functional effect of pain is not determinative of the outcome." Burgess v. Astrue, No. 8:09-3096-JFA-BHH, 2011 WL 345838, at *3 (D.S.C. Feb. 1, 2011). Unlike the claimant in Hines, Bailey has objective test results that indicate the degree of specific manifestations of her pain, in addition to her testimony. The ALJ's decision reflects that he considered the full range of evidence, and took motion, sensation, and strength results into consideration, alongside evidence of Bailey's testimony, complaints to providers, daily activities, and efficacy of her medication to draw his conclusion about the severity of her condition and its impact on her ability to work. Insofar as the evidence is arguably inconsistent, it is the ALJ's responsibility to evaluate all of the proof within the statutory scheme, and this court may not re-weigh the evidence. See Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Therefore, the court finds substantial evidence to support the ALJ's finding as to Bailey's credibility determination as to her limitations.

**B.      Residual Functional Capacity**

Bailey asserts that the ALJ erred in his determination of her residual functional capacity because he failed to adequately restrict her activity or explain how the evidence supported her ability to perform sustained work, specifically with regard to her claimed limitations for sitting, using her hands, or dealing with severe pain.

A claimant's residual functional capacity "is the most [a claimant] can still do despite [her] limitations" and is determined by assessing all of the relevant evidence in the case record. 20 C.F.R. § 404.1545(a)(1). In assessing residual functional capacity, an ALJ should scrutinize "all of the relevant medical and other evidence." See 20 C.F.R. § 404.1545(a)(3). Social Security Ruling



96-8p further requires an ALJ to reference the evidence supporting his conclusions with respect to a claimant's residual functional capacity. See SSR 96-8p, 1996 WL 374184. The residual functional capacity assessment must be based on all of the relevant evidence in the record.[1] Id. The ALJ must address both the individual's exertional and nonexertional capacities. Id. at *5-6. Further, the assessment must include a narrative discussion describing how the evidence supports the ALJ's conclusion. Id. at *7.

As stated above, the ALJ determined that Bailey retained the residual functional capacity "to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Specifically, the claimant is able to lift and carry up to 10 pounds occasionally and lesser amounts frequently, sit for 6 hours in an 8-hour day, and stand and walk occasionally." (Tr. 12.)

First, Bailey argues that the ALJ's finding that she has the capacity to sit for six hours in an eight-hour day ignores her testimony that she spends most of her time lying down and that she is not able to sit for more than 15 minutes. In support of her argument, Bailey points to her MRI results as objective evidence of her arthritis, degenerative disc disease, and stenosis, to support her allegations "that she would have problems sitting in a normal seated position for prolonged periods." (ECF No. 19 at 27.) However, as discussed above, in formulating the residual functional capacity restrictions, the ALJ expressly considered Bailey's MRI, as well as subsequent records from May

---

[1] This evidence includes: medical history, medical signs and laboratory findings, the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication), reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment, evidence from attempts to work, need for a structured living environment, and work evaluations, if available. SSR 96-8p, 1996 WL 374184, *5.

PJG

through August 2009, which revealed normal motor functioning, conservative treatment, pain relief from medication and injections, and daily functioning that included seated activities such as watching her son play basketball and watching television.

Second, Bailey contends that the ALJ erred by failing to add dexterity restrictions in her residual functional capacity in light of the evidence that she has problems using her hands. Bailey points to the ALJ's finding that she is significantly impaired by fibromyagia, which is a condition with a primary symptom of joint pain, and argues that other medical evidence of arthritis and complaints to her doctors on the issue further demonstrate that the ALJ should have expressly addressed this limitation in his residual functional capacity assessment. (ECF No. 19 at 27-28.) However, the ALJ was not "silent" about the issue, as Bailey avers. The ALJ recited her testimony that her "hands would swell daily," but determined that her complaints were not credible to the extent they were inconsistent with medical records that showed "no chronic inflammation or edema . . . with swelling of the hands and feet noted on only one occasion. (Tr. 13.) Although Bailey cites medical records in 2007 in which Bailey complained of hand pain and grip issues, the ALJ specified that he took into account all the records involving her general pain, including an "unremarkable" subsequent examination in 2008 and tests in 2009 demonstrating normal motor function and coordination, as well as Bailey's reports to her treating physicians about prescription relief. (Tr. 12, 15.) Moreover, the ALJ also gave some weight to conclusions of the state agency physicians who recommended no dexterity limitations, including "unlimited" fingering and fine manipulation. (Id. 14, 288.)

Finally, Bailey argues that the ALJ erred in failing to include in her residual functional capacity any mental restrictions related to severe pain or other special accommodations, such as sit-



stand option. (ECF No. 19 at 28.) However, Bailey has failed to direct the court to evidence to support that she suffers from a mental condition, and as explained above, the ALJ discounted her credibility as to the intensity and limiting effects of her pain. Consequently, the court finds that there was substantial evidence to support the ALJ's conclusion in her residual functional capacity that a limitation to sedentary work compensated for her issues and that she was not disabled as defined by the Social Security Act. See Blalock, 483 F.2d at 775 (stating that the court must uphold the Commissioner's decision as long as it is supported by substantial evidence); see also Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (defining substantial evidence as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion").

## RECOMMENDATION

For the foregoing reasons, the court finds that Bailey has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
April 9, 2012                                           Paige J. Gossett
Columbia, South Carolina                 UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).